UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILKB, LLC<br><br>                                        Plaintiff,<br><br>                 - vs -<br><br>JERRY KAVOURAS.<br><br>                                        Defendant. | Civil Action No. |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ILKB, LLC ("Plaintiff" or "ILKB"), by its attorneys, Gordon Rees Scully Mansukhani, for its Complaint for Damages and Injunctive Relief against Defendant Jerry Kavouras respectfully alleges as follows:

### NATURE OF ACTION

1. ILKB brings this action to protect its franchise system from a former franchisee, who illegally used his prior relationship with ILKB to misappropriate ILKB's good will, customers, and confidential information to form a competing fitness business in breach of his Franchise Agreement and federal and state law.

2. Defendant, having operated an ILKB franchise for nearly four years, switched to a KickHouse-branded business, an ILKB competitor, while retaining the same location, same contact information, same employees, and loyal customers.

3. Rather than de-identify with ILKB, Defendant kept and used vestiges of his relationship with ILKB in order to retain those customers, who had bought into the ILKB brand. Defendant also continued to use ILKB's know-how, training methods, and other confidential and proprietary materials.

4.      Defendant's improper conduct is an attempt by Defendant to line his own pockets at the expense of ILKB and the other franchisees in the system who continue to comply with the system's operational requirements in good faith.

5.      ILKB has invested significant time and money in building a franchise system of kickboxing fitness studios. The result is ILKB's innovative approach to fitness, marketing, and converting prospective leads into loyal and committed members. As in many franchise systems, protecting the brand and the integrity of the system are paramount concerns for the survival and success of the system as a whole.

6.      Defendant's illegal actions threaten to destroy that system.

7.      Consequently, ILKB seeks damages as described more fully below.

8.      ILKB also intends to seek preliminary and permanent injunctive relief due to the irreparable harm that Defendant will cause to ILKB if he is not stopped.

9.      The relief requested herein is necessary to enforce ILKB's system standards and protect the integrity of the system against Defendant, who is determined to create a competing brand through misappropriation of ILKB's customers and proprietary systems.

## THE PARTIES

10.     Plaintiff ILKB is organized under the laws of the State of New York with its principal place of business at 1844 Lansdowne Avenue, Merrick, NY 11710. ILKB is the franchisor of iLoveKickboxing.com, a franchise of physical fitness studios focused on kickboxing. ILKB's member is a citizen of New York. The ILKB franchise system consists of over 150 studios operating throughout the United States and Canada.

11.     Defendant Jerry Kavouras, is a natural person, who resides in or around Chicago, Illinois. Defendant is a signatory to a franchise agreement with ILKB (the "Franchise

Agreement") dated June 28, 2016. **Exhibit A**. This is a valid and enforceable agreement.

12. Defendant owns and operates and fitness studio located at 4733 N. Western Ave., Chicago, IL, (773) 716-3834 (the "Franchise Location"). Defendant operated his ILKB franchise from this location for more than three years.

13. Today, Defendant operates a KickHouse studio at the former Franchise Location. This business continues to offer the same services to the same customers as when it was ILKB branded.

## SUBJECT MATTER JURISDICTION

14. This Court has subject matter jurisdiction in this case under 28 U.S.C. § 1332. Plaintiff is a citizen of New York. Defendant is an Illinois citizen; thus, there is complete diversity of citizenship between ILKB and Defendant, and the amount in controversy exceeds $75,000, exclusive of fees and costs.

15. Subject matter jurisdiction in this Court also exists under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*.

16. Subject matter jurisdiction over the remaining claims also exists pursuant to 28 U.S.C. § 1367 because those claims for relief are so related to the other causes of actions as to form part of the same case or controversy.

## PERSONAL JURISDICTION AND VENUE

17. This Court has personal jurisdiction over Defendant pursuant to New York's long arm statute, C.P.L.R. § 302(a)(1) because Defendant transacted business in the State of New York and this action arises out of that business transaction.

18. Personal jurisdiction exists under New York's long arm statute, C.P.L.R. § 302(a)(3) because Defendant's actions caused injury in the state of New York and he reasonably

should have expected damages to occur in the state based on the prior, substantial revenue gained by the Defendant through his participation in interstate commerce.

19. This Court also has personal jurisdiction over Defendant because he consented and submitted to personal jurisdiction in either New York or Nassau County, New York pursuant to the Franchise Agreement.

20. Venue in this Court is appropriate under 28 U.S.C. § 1391.

21. In addition, and pursuant to the Franchise Agreement, Defendant waived any objection to the laying of venue in this Court. The Franchise Agreement and all related matters are expressly governed by the laws of New York, without regard to the principles of conflicts of laws, and provides that any dispute between ILKB and Defendant shall take place in New York.

## DEFENDANT'S FRANCHISE AGREEMENT

22. The relationships between ILKB and its franchisees are governed by franchise agreements, each of which contain essentially the same terms and provisions and are intended to govern each franchisee's operation of a single iLoveKickboxing.com studio within a specified geographic territory.

23. Defendant and ILKB are parties to the Franchise Agreement, which granted Defendant the right to develop an ILKB studio in the Chicago, Illinois area (the "Territory"). Defendant opened his studio in July 24, 2017.

24. The Franchise Agreement has a five year term. Defendant's initial term was scheduled to expire on July 24, 2022.

25. To protect ILKB's franchise business, trade secrets, and confidential information, including without limitation information regarding the "operational, sales, promotional, and marketing methods and techniques of the System," Article XI of the Franchise Agreement

restricted Defendant from certain in-term activities which might harm ILKB and its franchise system.

26. First, pursuant to Section 11.1(a), during the term of his Franchisee, Defendant promised not to "operate, manage, own, assist or hold an interest in (direct or indirect as an employee, officer, director, shareowner, partner or otherwise), or engage in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, without our express prior written consent."

27. Second, pursuant to Section 11.1(b), Defendant promised not to "(i) divert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, (ii) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System, or (iii) solicit without our prior consent any person who is at that time employed by us or any related entity to leave his or her employment."

28. Pursuant to Article VIII, Defendant also agreed to operate in conformity with the methods and standards required of all franchisees. Defendant, like all other ILKB franchisees, is aware that other franchisees in the system are similarly bound.

29. Under Section 8.2 of the Franchise Agreement, Defendant was required to keep the Confidential Operations Manual, a document developed to direct franchisees in how to operate their ILKB-branded business, confidential and return it at the end of their term.

30. Under the Franchise Agreement, franchisees are required to maintain a telephone number for their franchise. At the end of the term, he is required to turn that number over to ILKB or cancel the listing. Ex. A §§ 8.9, 15.1.

31. Under Section 9.1 of the Franchise Agreement, Defendant was prohibited from

using ILKB's trademarks for any purposes not approved in the Confidential Operations Manual.

32. Under Section 9.3 of the Franchise agreement, Defendant was prohibited from using any of ILKB's trade secrets and confidential and proprietary information for any purposes other than the operation of an ILKB franchise as described in the Confidential Operations Manual.

33. Under Section 11.2 of the Franchise Agreement, the Defendant agreed to an 18 month non-competition agreement following his termination or separation from ILKB. That clause prohibits Defendant from either directly or indirectly "operat[ing], manag[ing], own[ing], assist[ing] or hold[ing] an interest in…, or engag[ing] in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, within a radius of 25 miles of your Outlet or any other authorized retail location selling ILKB Services and Products, without our express prior written consent." This clause further prohibited using any confidential or proprietary information.

34. Under section 15.1 of the Franchise Agreement, upon termination, Defendant was required to

    a. discontinue the use or display of ILKB Marks;

    b. cease operations of ILKB franchise location;

    c. contact Yelp, and other online websites to request removal of ILKB Marks used in connection with your ILKB franchise location;

    d. return all proprietary and confidential information as outlined in Section 15.2; and

    e. assign all interest and right to telephone numbers and listings to ILKB.

## ILKB'S INTELLECTUAL PROPERTY, TRADE SECRETS, AND CONFIDENTIAL INFORMATION

35. At considerable effort and expense, ILKB has developed confidential and proprietary information concerning the marketing and sales of its franchises. Among other things, ILKB has conceived and developed various service marks and trade dress, business plans, service delivery strategies, training materials, cost models and budgets, and lead generation systems which are highly proprietary to ILKB. ILKB's trade secrets are at least partly contained within its Confidential Operations Manual.

36. ILKB expends significant resources, in terms of capital investment and time, to develop customized marketing strategies to bolster the value of the iLoveKickboxing.com brand and sell franchises. For this reason, ILKB takes special precautions to maintain the confidentiality of its confidential and proprietary information.

37. ILKB has the right to license the federally registered iLoveKickboxing.com® trademarks, service marks, logos, and derivations thereof (the "Marks") for use by its franchisees to be used solely in the operation of an ILKB branded business.

38. These marks include, but are not limited to:

   a. The service mark iLoveKickboxing.com, Registration No. 4,009,496, registered on August 8, 2011.

   b. The service mark , Registration No. 4,324,564, registered on April 23, 2013.

c. The service mark , Registration No. 5,446,133, registered on April 17, 2018.

39. ILKB also licenses to its franchisees the right to participate in its confidential and proprietary business systems pursuant to written franchise agreements, which are reasonably and carefully tailored to protect ILKB's valuable confidential information, reputation, goodwill, and other legitimate business interests.

40. ILKB owns the distinctive and well-known iLoveKickboxing® system, which offers in-person and online fitness classes, which focus on kickboxing to the public under the Marks.

41. Under the Franchise Agreement, Defendant had a limited license to use the Marks. Defendant agreed to only use the Marks in conjunction with the operation of his ILKB franchise. He specifically agreed that he would not "display Marks except in the manner [ILKB] authorize[d]." Ex. A § 8.3. Moreover, he acknowledged that "the use of the Marks outside the scope of the terms of this Agreement without [ILKB's] written consent is an infringement of the Owner of the Marks' and our exclusive rights, title and interest in and to the Marks." *Id*. at § 9.3.

42. Over the course of his franchise relationship with ILKB, Defendant had complete access to and, upon information and belief, did access, significant quantities of information related to ILKB franchise model, which included marketing materials, methods, and opportunities; potential revenues associated with those opportunities, franchisee owner and contact information; customer and prospect lists; and ILKB's approach to meeting the needs and

requirements of its franchisees.

43. ILKB carefully safeguards its confidential and proprietary business information by, among other things, limiting access to such information to existing franchisees, maintaining computer security devices, and requiring franchisees to agree that he will not disclose confidential information to anyone outside of ILKB and its franchise system pursuant to Section 9.3 of the franchise agreements.

44. Defendant, by virtue of the Franchise Agreement, gained access to this information and, pursuant to Section 9.3, promised to keep it confidential and only use it for ILKB business. This information is not generally known, costly to produce, and difficult to obtain.

45. Defendant participated in regular meetings and trainings between ILKB and franchisees, which included discussions about planning, services, cost information, profit margins, sales training, strategic decisions with respect to ILKB's franchise system, and the future direction and long term growth challenges and opportunities of ILKB. Defendant received confidential and proprietary information only disclosed to ILKB's most-trusted and successful franchisees and not shared with other employees, clients, prospective clients, or third-parties.

46. Through his interaction with ILKB personnel and executives, Defendant has obtained a great deal of knowledge with respect to the personal fitness marketplace and marketing strategies which are proprietary to ILKB and were developed by ILKB for the sole benefit of itself and its franchisees.

## DEFENDANT'S CONTRACTUAL BREACHES AND VIOLATIONS OF LAW

47. Defendant, benefiting from the goodwill associated with ILKB's service marks and trade dress, and employing ILKB's trade secrets and confidential information, was

successful in the opening and operation of his studios in Illinois.

48. Defendant—as a result of his status as ILKB franchisees and manifestly unlawful actions—are in a unique position to improperly take advantage of the goodwill that ILKB has invested a significant amount of time and resources developing and cultivating with its franchisees.

49. During the term of his Franchise Agreement, Defendant began a scheme to compete with ILKB by developing a new brand of fitness studio: KickHouse. That business offered effectively the same services and sought to take advantage of the customer base that Defendant developed using the ILKB system. Based on information and belief, Defendant continue to use ILKB branded equipment and confidential methods in the operation of his business.

50. In or around August 2020, Defendant rebranded as KickHouse. The former Franchise Location is now listed on the thekickhouse.com website.

51. Upon information and belief, Defendant is now associated with Kick House Fitness, LLC (which does business as KickHouse), a new, unregistered franchisor, who has been working with several former ILKB franchisees in violation of their franchise agreements to establish a competing brand.

52. Despite rebranding as KickHouse, Defendant continued to associate his business with the Marks in order to promote the KickHouse and retain brand continuity. Specifically, Defendant continued to use the Marks on social media, on his physical signage, branded equipment, among other things.

53. By continuing to use the Marks for his commercial benefit without authorization, Defendant is actively violating federal law and his Franchise Agreement.

54. On or around June 22, 2020, Defendant sent ILKB a "notice to cure letter," in which he claimed certain defaults as well as a right to continue to use ILKB's Marks and system and not pay royalties.

55. Between June 23 and August 24, Defendant did not participate in the mandatory dispute resolution proceedings, including an in person meeting and mediation.

56. Upon information and belief, the Defendant's use knowledge of ILKB's confidential information and trade secrets in the operation of KickHouse, which is a material breach of the Franchise Agreement.

57. Defendant competed against ILKB in direct violation of his Franchise Agreement both during his time as a franchisee and after his term ended.

58. Defendant's unique knowledge of ILKB's confidential information and strategies will give Defendant a distinctly unfair advantage in competing with ILKB for business. Unlawfully possessing ILKB's proprietary information, such as that described above, would enable and have enabled the Defendant to make decisions about his own plans that take into account ILKB's confidential business information.

59. Defendant has continued to use ILKB's intellectual property, including but not limited to its trademarks, trade dress, and service marks in violation of Article IX of the Franchise Agreement.

60. Defendant has been using the same telephone numbers and addresses for the former franchise locations on business cards, his websites, and social media profiles.

61. ILKB terminated its relationship with Defendant on August 24, 2020, by sending a notice of termination letter. This letter reminded Defendant of his post-termination obligations under the franchise agreement, including:

    a. Immediately returning all copies of the Confidential Operations Manual and all promotional materials;

    b. De-identifying with ILKB, including referencing himself as formerly associated with ILKB;

    c. Removing all ILKB marks and discontinuing any communications that suggest a relationship with ILKB;

    d. Transferring all telephone numbers for the location to ILKB or canceling and delisting them; and

    e. Not competing with ILKB for 18 months unless Franchisor gives written approval.

62. Defendant was also reminded of the consequences of failing to comply with his duties under the Franchise Agreement.

63. As of this date, Defendant continues to violate all of his post-termination obligations.

## FIRST CAUSE OF ACTION

(Breach of Contract)

64. ILKB realleges the allegations contained in paragraphs 1 through 63 of this Complaint as if set forth fully herein.

65. ILKB and Defendant are parties to a valid and enforceable Franchise Agreement.

66. ILKB has substantially performed all of its duties associated with the Franchise Agreement.

67. Pursuant to the terms of the Franchise Agreement, Defendant is prohibited from, *inter alia*, (a) directly or indirectly operating, managing, owning, assisting, or holding an interest

in any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business; (b) diverting or attempting to divert any business or customer of the Franchised Business to any competitor; (c) doing or performing any act injurious or prejudicial to the goodwill associated with the Marks or the franchise system; (d) using telephone numbers from the former franchise locations; (e) using ILKB's Marks; and (f) using ILKB's confidential information.

68. The in-term and post-term restrictive covenants are reasonable and necessary for the protection of ILKB's legitimate interest in its trade secrets and confidential information and the integrity of its franchise system.

69. As described above, Defendant breached the terms of the Franchise Agreement by creating and operating the competing KickHouse business at the same locations and contact information, using the same personnel, stealing ILKB's customer and confidential information, and using ILKB's Marks.

70. In so doing, Defendant has diverted customers and other ILKB franchisees toward the competing enterprises and otherwise taken action injurious to the goodwill associated with the ILKB service marks, trade dress, and franchise system.

71. If Defendant is not enjoined from joining a directly competitive business, from violating his Agreement, and from using or disclosing ILKB's trade secrets and other confidential proprietary information, ILKB will suffer immediate and irreparable harm to its business and goodwill, including but not limited to: loss of business and commercial reputation, goodwill, business and economic opportunities, loss of use of its own property, and loss of use and disclosure to a competitor of this valuable confidential and proprietary information.

72. In addition, as a proximate and direct result of Defendant's actions, ILKB has and

will continue to suffer substantial money damages, including without limitation direct, incidental, consequential, and liquidated damages.

## SECOND CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Common Law of the State of New York)

73.     ILKB realleges the allegations contained in paragraphs 1 through 63 of this Complaint as if set forth fully herein.

74.     By virtue of his contractual relationships with ILKB, ILKB gave Defendant access to trade secrets and confidential and proprietary information ("Trade Secret Information")—information that is valuable to ILKB's franchise model and gives ILKB an advantage over competitors.

75.     Defendant has a common law duty prohibiting him from using Trade Secret Information procured during his franchise relationship with ILKB for any purpose other than for the benefit of franchise and, by extension, ILKB as franchisor.

76.     Defendant has misappropriated ILKB's Trade Secret Information, upon information and belief, for his own pecuniary gain.

77.     ILKB is entitled to preliminary and permanent injunctive relief.

78.     Unless injunctive relief is granted, Defendant will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

79.     In addition to giving rise to injunctive relief, the Defendant's misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer substantial damages, including without limitation direct, incidental, and consequential damages, in an amount to be established at trial.

80. Defendant's misappropriation of ILKB's Trade Secret Information was intentional, malicious, unlawful, unfair and otherwise improper, thereby making punitive damages appropriate.

### THIRD CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Statutory Laws of the United States)

81. ILKB repeats and realleges the allegations contained in paragraphs 1 through 80 of this Complaint as if set forth fully herein.

82. The Trade Secret Information obtained by defendant relates to ILKB's business and services that are maintained and provided in interstate commerce.

83. The Trade Secret Information obtained by defendant is a "trade secret" within the meaning of 18 U.S.C. § 1839(3) because, inter alia, it is secret and of value as a result of not being generally known as set forth above, and ILKB takes and has taken measures to prevent the secrets from becoming available to persons other than those selected by ILKB to have access thereto.

84. Defendant has misappropriated ILKB's Trade Secret Information, upon information and belief, for his own pecuniary gain. He has shared this information with KickHouse and its employees, who know that this information has been illegally misappropriated, but nonetheless use it in the operation of their businesses.

85. As a result of Defendant's misappropriation of ILKB's Trade Secret Information, defendant have and continue to violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

86. Pursuant to Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A), ILKB is entitled to preliminary and permanent injunctive relief.

87. Unless injunctive relief is granted, Defendant will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

88. In addition to giving rise to injunctive relief, Defendant's misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer actual damages in an amount to be established at trial.

89. By virtue of Defendant's bad faith and willful and malicious misappropriation of ILKB's Trade Secret Information, ILKB is entitled to an award for its damages, reasonable royalties, exemplary damages in an amount up to two times awarded damages and reasonable attorney's fees, as provided for by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b)(3)(B)-(D).

## FOURTH CAUSE OF ACTION

(Unfair Competition)

90. ILKB realleges the allegations contained in paragraphs 1 through 63 of this Complaint as if set forth fully herein.

91. Defendant has engaged in conduct intended to undermine, destroy and misappropriate the business of ILKB by using ILKB's Trade Secret Information to compete unfairly with ILKB in violation of defendant's contractual obligations and the common-law.

92. Defendant's conduct constitutes common law unfair competition, and unless he is enjoined, ILKB will suffer irreparable injury for which it is no adequate remedy at law.

93. In addition, as a proximate and direct result of Defendant's actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, and consequential damages.

**REQUEST FOR INJUNCTIVE RELIEF**

94. ILKB re-alleges the allegations contained in paragraphs 1 through 63 of this Complaint as if set forth fully herein.

95. For all the foregoing reasons, and as monetary damages are inadequate to fully compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer relationships, and future profits resulting from Defendant's wrongful acts, preliminary and permanent injunctive relief barring Defendant, his servants, agents, employees, and all persons acting in concert with him from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement, ILKB prays for a preliminary and permanent injunction as set forth in Paragraph A of its prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, ILKB demands judgment as follows:

A. As monetary damages are inadequate to fully compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer relationships, and future profits resulting from Defendant's wrongful acts, preliminary and permanent injunctive relief barring Defendant, his servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement including: (i) offering, advertising, marketing or otherwise engaging in competitive services against ILKB for the duration of the Franchise Agreement and pursuant to the post-termination provisions specified under Section 11.2; (ii) using ILKB's trade secrets and confidential and proprietary information in a manner which would result in harm to ILKB and its franchise system; (iii) soliciting, directly or indirectly, any ILKB franchisees or prospects for benefit of the KickHouse brand; (iv) inducing or encouraging

any ILKB franchisees to breach their respective franchise agreements with ILKB, including without limitation those provisions designed to preserve and maintain the uniformity of the system (Article VIII); (v) using ILKB's Marks; or (vi) using the former contact information for ILKB.

      B.      An award of damages in an amount sufficient to compensate it for any ascertainable and calculable damages, losses, and/or loss of revenues and opportunities occasioned by Defendant's wrongful conduct as described herein, including, but not limited to, payment of past and future lost royalties occasioned by Defendant's breach of contract, direct and indirect damages for misappropriation of trade secrets and confidential and proprietary information, and damages for tortious interference and unfair competition;

      C.      An award of pre-judgment interest on all such sums awarded;

      D.      An award of punitive and exemplary damages and reasonable royalties as the Court may deem appropriate; and

      E.      An award of costs, disbursements and attorneys' fees incurred in connection with this action, as well as any other and further relief as the Court may deem just, proper, and equitable.

Dated:  September 29, 2020.            GORDON REES SCULL MANSUKHANI, LLP

By: */s/ Peter G. Siachos*
Peter G. Siachos, NY Bar #4436168
psiachos@grsm.com
1 Battery Park Plaza, 28th
New York, NY 10004
Phone: (973) 549-2527
Fax: (973) 377-1911

*Attorneys for Plaintiff ILKB*